THE STATE OF IOWA *ex rel.*, C. C. BUMP, Appellant, v. THE OMAHA & COUNCIL BLUFFS RAILWAY & BRIDGE COMPANY.

**Constitutional Law.** DISCRIMINATING ORDINANCES. (A city ordinance permitting a street railway company engaged in interstate commerce under franchise granted by the city to make discrimination in rates in favor of residents of the city against

residents of another state is unconstitutional, because it con-
flicts with the interstate clause of the federal constitution. )

UNIFORM OPERATION. The Council Bluffs city ordinance giving resi-
dents of that city a special privilege of obtaining transporta-
tion on a street railway at a less rate than residents of another
state violates Constitution, Article 1, section 6, which requires
that all laws of a general nature have uniform operation.

"By-Laws of a general and permanent nature" defined to include
franchise ordinance: PUBLICATION. The term "By-Laws of a
general or permanent nature," used in Code 1873, section 492,
requiring publication of such By-Laws; and providing that they
shall take effect and be in force at the expiration of five days
after they have been published, includes a city ordinance grant-
ing a franchise.

PUBLICATION: *Sufficiency.* The publication of a city ordinance in
a special edition of a daily paper, and the distribution of 50
or 100 copies of such edition by parties interested in the ordi-
nance, is not a publication in a newspaper of general circula-
tion; as required by Code 1873, section 492.

Franchise Ordinances. STEPS TO MAKE VALID: *Must be taken
before power to grant franchise is withdrawn:* All steps
necessary to the validity of a city ordinance granting a fran-
chise to a street railway must be taken before the power to
grant the franchise is withdrawn, or it will be void.

*Appeal from Pottawattamie District Court.*—HON. A. B..
THORNELL, Judge.

SATURDAY, JANUARY 19, 1901.

THIS is an action to test the validity of an ordinance
passed by the city of Council Bluffs on September 20, 1897,.
amending an ordinance of the same city, passed in 1886,
conferring upon defendant, as a corporation, the power to
construct, operate, and maintain street railways in the city
of Council Bluffs. The lower court held that the ordinance
in question was invalid for want of proper publication, and
also on the ground that it provided for certain discrimina-
tions in fares in behalf of the citizens of Council Bluffs,.
which rendered it unconstitutional; but it upheld the ordi-
nance as against the objection that it was unreasonable and.

contrary to public policy. Both parties appeal and assign errors; but defendant will be designated as appellant.— *Affirmed.*

*Wright & Baldwin* for appellant.

*Harl & McCabe* for appellee.

McCLAIN, J.—The objection to the ordinance that it was not properly published is based on the following facts: The ordinance was passed on September 20, 1897, while the provisions of the Code of 1873 were still in force. It was signed by the mayor at 9 o'clock on the evening of the thirtieth day of the same month. On the first day of October the Code of 1897 took effect, under the provisions of which it was not competent for the council to grant such a franchise without submission of the question to a vote of the people of the city. If the ordinance did not take effect as a valid act before the first day of October, it is not valid at all, for no submission of the question was made or provided for. Section 492 of the Code of 1873 provides that "all ordinances shall as soon as may be after their passage be recorded in a book kept for that purpose and be authenticated by the signature of the presiding officer of the council and the clerk, and all by-laws of a general or permanent nature * * * shall be published in some newspaper of general circulation in the municipal corporation: * * * provided, however, that if no such newspaper is published within the limits of the corporation, then and in that case such by-laws may be published by posting * * * and such by-laws and ordinances shall take effect and be in force at the expiration of five days after they have been published." About 11 o'clock at night on the thirtieth of September a so-called extra edition of a daily paper published at Council Bluffs was issued, containing a publication of this ordinance and also of another ordinance of similar character. From 50 to 100 copies of such edition were printed, all of which were

purchased by persons directly interested in the ordinance in question, and sold on the streets and on trains by the persons who procured them for this special purpose. On October 1st the ordinance was published in due form in the regular edition of the same paper. It is contended on behalf of plaintiff that publication of the ordinance was essential to its validity, that the publication in the extra edition was not such publication as was required, and that therefore the ordinance did not become a valid act prior to the taking effect of the Code of 1897 and is not valid now. But defendant insists that the publication was sufficient, and that, even if it was not, publication was not essential to the validity of the ordinance, or, if required at all, might be made after the provisions of the Code of 1873, under which it was enacted, had been superseded by the provisions of the Code of 1897.

2       The term "by-law of a general or permanent nature," used in the section of the Code of 1873 above quoted, certainly includes ordinances such as that which we have before us. A by-law is "a law made by a municipality for the regulation of affairs within its authority; an ordinance." Century Dictionary. "In general and professional use the term 'ordinance' is almost, if not quite, equivalent in meaning to the term 'by-law,' and is the word most generally used to denote the by-laws adopted by municipal corporations." I Dillon, Municipal Corporations (4th ed.), section 307. The ordinance in question was of a general and permanent nature, and plainly was within the term "by-law," used in the statutory provision. The section of the Code of 1873 above referred to provides that such by-laws "shall take effect and be in force at the expiration of 5 days after they have been published." We are of the opinion that publication is essential to the validity of such an ordinance. Until published it does not take effect. To insist that it is a valid ordinance, although not published, and that a subsequent publication is simply a condition to its enforcement, would be no more reasonable

than to insist that it is valid when passed by the council, and that the signature of the mayor is merely a subsequent condition necessary to its going into operation. If the ordinance did not take effect until five days after it was published, then it did not take effect at all until after the Code of 1897 came into force; and, under section 776 of that Code, no such franchise can be granted or renewed unless submitted to a vote of the electors, and a majority of the legal electors voting thereon in favor of the same. If this ordinance did not become a valid ordinance before the first day of October, 1897, it has not become an ordinance at all. See *State v. Dawson,* 16 Ind., 40, where it is held that a corporate charter granted by special act, which had not become valid by acceptance prior to the taking effect of a constitutional provision forbidding the granting of charters in that manner, did not afterwards become valid by acceptance. In our opinion, the publication was one of the steps necessary to make this a valid ordinance. The provision about publication is not directory only, but compliance with it is essential to the validity of an ordinance. This step not having been taken as required by law, and during the time when such an ordinance might be passed, the ordinance fails. It may be further said that the ordinance itself contains a provision that it shall take effect and be in force "after its publication according to law." If it was not published according to law within the time during which such an ordinance might lawfully be enacted, it was not published "according to law" at all.

We have assumed in the preceding statement that there was no sufficient publication on the thirtieth of September. It is hardly necessary to cite authorities to show that a publication in an extra edition of 50 or 100 copies issued at 11 o'clock at night, and not mailed to subscribers or otherwise distributed, except as sold by parties directly interested, was not an official publication. The following cases, however, will be found to be in point: *Pratt v. Tinkcom,* 21 Minn. 142; *Tully v. Bauer,* 52 Cal.

487; *Scammon v. City of Chicago,* 40 Ill. 146; *Ormsby v. City of Louisville,* 79 Ky. 197.

The other objection to the ordinance was also, as we think, correctly sustained. It is provided therein that, as one of the considerations for the extension of the franchise, defendant "shall constantly keep at its principal office in Council Bluffs and in some convenient central locality, for sale to the residents of Council Bluffs for a sum not to exceed \$1.50, commutation tickets good for thirty rides for thirty days from the date of issue, from any point on its line in Council Bluffs over its bridge to any point in Omaha to which its cars may be operated * * * and from said point in Omaha over its bridges and lines to any point of its lines in Council Bluffs, which said tickets shall be nontransferable and irredeemable except for unavoidable casualty." There can be no question but that defendant, whose business, under this franchise, included the transportation of persons between Council Bluffs and Omaha, was engaged in interstate commerce, and any regulation of rates discriminating in favor of the citizens of this state as against those of another state must necessarily be invalid. *Guy v. City of Baltimore,* 100 U. S. 434 (25 L. Ed. 743); *Gloucester Ferry Co. v. Pennsylvania,* 114 U. S. 196 (5 Sup. Ct. Rep. 826, 29 L. Ed. 158); *Railway Co. v. Smith,* 173 U. S. 684 (19 Sup. Ct. Rep. 565, 43 L. Ed. 858). Furthermore, the ordinance is invalid under the provision of the constitution of Iowa (article 1, section 6), which requires that laws of a general nature shall have uniform operation. This ordinance does not operate uniformly as to all persons who would be entitled to ride on the cars of defendant company, but gives a privilege to those who are citizens of Council Bluffs not enjoyed by other citizens of the state. Both objections are sustained in the case of *Town of Pacific Junction v. Dyer,* 64 Iowa, ·38, where this court held that an ordinance requiring transient merchants to pay a certain

license, and defining a transient merchant to be "every non-resident person who shall sell, exchange," etc., was unconstitutional, because, so far as it discriminated against non-resident merchants of Iowa, it was in conflict with the commerce clause of the federal constitution, and so far as it discriminated in favor of resident merchants of a town, it was in conflict with the state constitution, and that, as the town council derived its power from the legislature of the state, it could not do what the legislature could not do. See, also, *City of Marshalltown v. Blum*, 58 Iowa, 184; *City of Stuart v. Cunningham*, 88 Iowa, 191, 193.—AFFIRMED.