"The writ brings up several convictions for violation of the sanitary code of the borough of Moonachie.
"An ordinance of the borough of Moonachie entitled `An ordinance concerning the raising and keeping of pigs in the borough of Moonachie' made it unlawful to maintain any piggery or to keep, raise or maintain upon premises within the limits of the borough any pig or pigs without a permit so to do. The permit allowed the holder to keep not more than ten pigs and provided a penalty for violation.
"The board of health under a supplement to its sanitary code took jurisdiction over the matter. The board of health instituted five proceedings against the prosecutor for violations of the sanitary code. The prosecutor was found guilty of violating section 2 of article 12 of the ordinance of July 12th, 1933, and July 13th, 1933, and of violating section 5 of article 12 on July 12th, 13th and 14th, 1933. The recorder imposed a fine of $100 and costs on each complaint, and further imposed a penalty of one hundred days in the county jail.
"Local boards of health have power to regulate the keeping of pigs. Section 12, Board of Health act. 2 Comp. Stat., p. 2663.
"The regulatory borough ordinance provides as follows: Section 2 of article 12: `No person shall have, keep, raise or maintain any pig or pigs within the limits of the borough of Moonachie without first having procured from the board of health of the borough of Moonachie a permit for that purpose. Such permit shall allow the holder thereof to have, keep, raise or maintain on the premises mentioned in such *Page 263 
permit, not more than ten (10) pigs.' Section 5 of article 12: `All buildings, yards, enclosures or premises in which any pig or pigs shall be kept, raised or maintained shall be at all times kept in a sanitary condition.'
"Obviously, the ordinance must be a reasonable exercise of the police power. The fact that the prosecutor owns twenty-one acres of land seems not pertinent. It is an obvious fact that even in less populated districts more than ten pigs may be a fit subject of regulation by the authorities charged with the duty to safeguard the public health. There is nothing in the record to indicate an unreasonable exercise of the police power. Nor would it appear that the action taken was arbitrary. Nearly every health code in the state contains regulations concerning the keeping of pigs, since it has long been recognized that the occupation is not one to be followed without reasonable regulation.
"It is next suggested that the license fee of $10 was imposed for revenue purposes only. When it is borne in mind that inspection of premises devoted to the raising of even ten pigs is necessary, the fee obviously is not unreasonable. It cannot be said that the fee is primarily for revenue purposes. It is true that the members of the board of health serve without compensation and that no paid inspectors are employed. However, the board cannot function without the receipt of fees to meet the necessary expenses of carrying on. The fee exacted broadly is no more than a fee for the expenses incident to the issuance thereof. More work is involved in the issuance of every license than the mere printing of the paper upon which it is issued. But in the instant case inspection from time to time is necessary.
"The proceedings complained of seem within the four corners of section 18 of the Health act (Comp. Stat., p. 2666), and further the complaints were sufficiently within the language of section 65. 3 Comp. Stat., p. 3987.
"Apparently the five complaints were issued on the same day, although charging violations of the ordinance upon different days. The recorder imposed a fine of $100 and costs upon each complaint and also a jail sentence of one hundred *Page 264 
days upon one of the complaints. The conviction in this case reciting that the defendant had been twice convicted within the space of six months of the violation of the same ordinance. Since the convictions all took place on the same day a prior conviction was not pleaded and could not be pleaded in any of the complaints, generally a prerequisite to an enlarged penalty. The prior conviction giving jurisdiction to impose a jail sentence would seem to be such prior convictions as showed a determination to flout the jurisdiction of the court. Such does not seem to be the case where the proceeding was not previous to any other proceeding, and all were instituted upon the same day and tried upon the same day. The words of the statute requiring "due proof of the prior conviction to be made" in order to confer jurisdiction indicate that the convictions to justify the imposition of drastic penalties must be convictions upon other times requiring proof before the court rather than several contemporaneous convictions.
"The judgments below are reversed so far forth only as a sentence was imposed requiring the defendant to serve one hundred days in the Bergen county jail."
The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Mr. Justice Bodine in the Supreme Court.
For affirmance — THE CHIEF JUSTICE, LLOYD, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 10.
For reversal — None. *Page 265